**FILED**

June 23, 2021
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JOSEPH EISEL,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0356** (BOR Appeal No. 2054801)
                        (Claim No. 2019003592)

**CITY OF SOUTH CHARLESTON,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Joseph Eisel, by Counsel Fred F. Holroyd, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). City of South Charleston, by Counsel Steven K. Wellman, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on September 4, 2018. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its October 10, 2019, Order and held the claim compensable. The Order was reversed by the Board of Review on May 15, 2020, and the claims administrator's rejection of the claim was reinstated.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

1

(d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. W. Va. Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Eisel, a manager, was injured when he was struck by a train on August 10, 2018. The Employees' and Physicians' Report of Injury indicates Mr. Eisel sustained injuries to his skull, vertebrae, left arm, and ribs, as well as numerous lacerations when he was hit by a train. The physicians' section was completed at Charleston Area Medical Center an listed the diagnoses as traumatic subarachnoid hemorrhage with loss of consciousness, displaced proximal phalanx fracture of the great toe, open radial fracture, and mandible fracture. The claims administrator rejected the claim on September 4, 2018.

In a November 8, 2018, affidavit, Mr. Eisel stated that he was in charge of the golf course clubhouse. As part of his duties, he made coffee for his employees and customers. On the day of his accident, Mr. Eisel drove from the clubhouse to Kroger to buy coffee creamer when he was struck by a train. He stated that he has made the trip several times during work hours and considered it part of his duties. Mr. Eisel asserted that no one had ever spoken to him about driving to the store on company time.

In a January 11, 2019, affidavit, Richard Atkinson III, a contractor for the employer, stated that Mr. Eisel was clocked in for work at the time of his accident, but Mr. Atkinson asserted that the accident did not occur in the course of Mr. Eisel's employment. Mr. Atkinson stated that he spoke to several of Mr. Eisel's coworkers who all said that Mr. Eisel left shortly after clocking in that morning for the sole purpose of getting coffee creamer. Mr. Atkinson also stated that the golf course runs a restaurant and provided both coffee and creamer for the customers and staff. There was plenty of coffee creamer at the golf course on the day of Mr. Eisel's accident. Mr. Eisel left to retrieve different coffee creamer because he preferred a different kind. Mr. Atkinson stated that Mr. Eisel had brought his own brand of coffee creamer to work on many occasions in the past and always purchased it using his own money. Mr. Atkinson asserted that Mr. Eisel was never instructed to leave work to purchase coffee creamer and had no authority to purchase coffee creamer on behalf of the employer. Mr. Eisel's accident occurred when he took a break from his work duties to engage in a personal errand.

2

Gina Silbaugh, a secretary for the employer, completed an affidavit on January 14, 2019, stating that Mr. Eisel was employed by Little Creek Golf Course, which is owned by the City of South Charleston. Ms. Silbaugh was not at work the day of Mr. Eisel's accident, but she stated that he had left in the past to purchase coffee creamer, though he usually brought it with him. Mr. Eisel should have clocked out before leaving for his personal errand. Ms. Silbaugh stated that if wanted coffee creamer the morning of his accident, he could have gotten some from the golf course restaurant, but Mr. Eisel prefers a different brand. The golf course never reimbursed Mr. Eisel for the coffee creamer that he bought in the past. Ms. Silbaugh stated that she and Mr. Eisel sometimes shared coffee creamer and that she sometimes purchased it. She had no expectation of being reimbursed because it was for personal use.

In a January 14, 2019, affidavit, Sandra Bishop, a secretary for the employer, stated that she was working on the day Mr. Eisel was injured. He left work to get some coffee creamer, which was not unusual, though he usually brought it with him. Ms. Bishop stated that employees are supposed to clock out before leaving for personal errands, and Mr. Eisel should have done so on the day of his accident. She asserted that the golf course has a large supply of coffee creamer and Mr. Eisel was not required to go purchase more.

On January 14, 2019, Richard Christensen, a clubhouse attendant, completed an affidavit stating that he worked with Mr. Eisel on the morning of his accident. That morning, there was only enough coffee to make one pot in the golf shop. Mr. Christensen stated that he told Mr. Eisel they could just take a cart to the restaurant for more. Mr. Eisel seemed annoyed and a few minutes later, he stated that he was going to the store to get coffee creamer. Mr. Christensen stated that he noted afterward that there was plenty of coffee creamer in the clubhouse. Mr. Eisel often left to retrieve his preferred brand of coffee creamer. Mr. Eisel also frequently left work on Fridays for various reasons. Mr. Christensen stated that Mr. Eisel usually made a big show of clocking out and telling people that if they left, they were required to clock out. It was not Mr. Eisel's responsibility to purchase coffee creamer. He often kept his preferred brand at work but did not make it available to customers.

In a January 14, 2019, affidavit, Jeffrey Burnette, a general manager for the employer, stated that the golf course supplies free coffee and creamer for staff and customers. The restaurant always had a large supply, including on the day of the accident. Mr. Burnette stated that Employees who leave the premises for personal errands are required to clock out and Mr. Eisel should have done so. Further, if Mr. Eisel was performing business for the employer, he would have taken an employer vehicle instead of his personal vehicle. Mr. Burnette stated that he was new to the position at the time of Mr. Eisel's accident but was aware that the previous general manager had warned Mr. Eisel about leaving on personal errands without clocking out. On the day of his accident, Mr. Eisel was not directed or authorized to leave the golf course for any reason. Mr. Burnette stated that Mr. Eisel has never been reimbursed for coffee creamer that he purchased, and the employer in no way benefitted from Mr. Eisel's trip.

The Office of Judges reversed the claims administrator's rejection of the claim and held the claim compensable in its October 10, 2019, Order. It found that Mr. Eisel was in the course of his employment when he went to get coffee creamer and was struck by a train. The employer

3

argued that Mr. Eisel did not have permission to leave work to pick up coffee creamer. The Office of Judges determined that Mr. Eisel left work to pick up coffee creamer on several occasions and considered the task part of his work duties. Several coworkers noted in their affidavits that Mr. Eisel frequently left the golf course to buy coffee creamer. Further, there were no management employees on site that morning to either give or deny Mr. Eisel permission to go to the store. The Office of Judges found that Mr. Atkinson gave no indication in his affidavit that he ever told Mr. Eisel that he was not authorized to purchase coffee creamer on behalf of the employer. The Office of Judges determined that Mr. Atkinson did not state that Mr. Eisel had no authority to leave work to purchase coffee creamer, just that he had no authority to purchase it as a covered expense. The Office of Judges concluded that Mr. Atkinson's statement that Mr. Eisel warned by the previous manager that he was not allowed to clock out and leave during the workday. The Office of Judges determined that Mr. Eisel's statement that he was never told he could not leave was more reliable than Mr. Atkinson's hearsay statement. The Office of Judges found no further evidence that Mr. Eisel was ever warned or disciplined for clocking out for personal errands. The Office of Judges concluded that the evidence indicates Mr. Eisel had permission to leave the golf course to buy coffee creamer on the day of his accident.

Mr. Eisel did not clock out for the task and testified that leaving to buy coffee creamer was a routine work duty. Part of his job duties is inventory management and making coffee for employees and customers. The Office of Judges also concluded that Mr. Eisel's use of his personal vehicle rather than a city vehicle does not place him outside of his course of employment. The Office of Judges found no evidence that Mr. Eisel was made aware of the policy requiring him to use employer vehicles for work duties. The Office of Judges stated that the employer's acquiescence to Mr. Eisel's use of his personal vehicle for work duties is tantamount to permission. Mr. Christensen's statement that Mr. Eisel left work to purchase the coffee creamer for personal use was found to be unreliable. Mr. Eisel's job duties included inventory management and the availability of other coffee creamer at the golf course restaurant does not necessarily mean that Mr. Eisel went to the store to purchase additional coffee creamer for personal use.

The Board of Review reversed the Office of Judges Order and reinstated the claims administrator's rejection of the claim on May 15, 2020. It found no causal connection between Mr. Eisel's injury and his employment duties. Mr. Eisel was not on the employer's premises when the injury occurred. Mr. Eisel left the premises in order to purchase his preferred type of coffee creamer. The employer neither directed Mr. Eisel to do so nor did it reimburse Mr. Eisel for his previous purchases of coffee creamer. Further, the Board of Review found that the employer already had a supply of a different kind of coffee creamer on the premises. The Board of Review determined that Mr. Eisel's actions at the time of his accident did not benefit the employer. Mr. Eisel was not in the course of his employment when he was injured.

After review, we agree with the reasoning and conclusions of the Board of Review. Pursuant to West Virginia Code § 23-4-1, employees who receive injuries in the course of and as a result of their covered employment are entitled to benefits. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Mr. Eisel was not in the course of his employment when he was injured. Mr. Eisel left

work to perform a personal errand, picking up his preferred type of coffee creamer. Given that the employer had an ample supply of coffee creamer on the premises, it is difficult to find that it benefitted from Mr. Eisel leaving the premises to purchase more creamer. Mr. Eisel was not directed to go to the store, and he was never reimbursed for such purchases in the past. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 23, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton